UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**FILED**

MAR 05 2008

DAVID CREWS, CLERK

By _____ Deputy

ESTATE OF DORIS BURNETT, )
DECEASED, By and Through the )
Administratrix MONIQUE BURNETT, )
Plaintiff )

VS.             Case No . *4: 08cv36 - P. B*

**JURY TRIAL DEMANDED**

PFIZER, INC.

## COMPLAINT

Plaintiff, Estate of Doris Burnett, Deceased, by and through the undersigned attorney files causes of action against defendants, as follows:

### PARTIES

1. Plaintiff Estate of Doris Burnett, Deceased, ("plaintiff") brings this action through its Administratrix Monique Burnett.

2. Plaintiff is the surviving daughter of decedent Doris Burnett ("decedent").
As such she is a proper party under Mississippi's wrongful death statute to bring a cause of action on behalf of all the persons entitled to bring an action for the wrongful death of decedent.

3. On September 9, 2004 plaintiff was appointed as Administratrix of the Estate of Doris Monique in the Chancery Court of Bolivar County, Second Judicial District, Mississippi. A copy of the Order Granting Letters of Administration  is attached hereto as Exhibit "A".  As such, she is a proper party to pursue a survival action on behalf of decedent.

4. At the time of the negligent acts complained of herein and at all times mentioned, plaintiff has been an individual over the age of 21 years old, residing in Bolivar County, Mississippi.

1

5. Defendant Pfizer, Inc. ("Pfizer" and/or "defendant") is a Delaware corporation with its principal place of business in New York. Pfizer and can be served Pfizer, Inc. and can be served with process at Pfizer, Inc., Attention: Legal Department 235 East 42nd Street, New York, New York 10017.

6. At all relevant times, defendant Pfizer designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed Bextra throughout the United States.

7. Upon information and belief, Pharmacia & Upjohn Company ("Pharmacia"), is owned and/or a subsidiary and/or agent of Defendant Pfizer, Inc.

8. At all relevant times, Pharmacia designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Valdecoxib under the brand name Bextra ("Bextra" or the "drug") throughout the United States. Defendant Pfizer is liable for the conduct and negligent/gross negligent of Pharmacia & Upjohn Company.

9. G.D. Searle, LLC ("Searle") is owned and/or a subsidiary and/or agent of Defendant Pfizer, Inc.

10. At all relevant times, Searle designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed Bextra throughout the United States. Pfizer is liable for the conduct and negligent/gross negligent of Pharmacia & Upjohn Company.

11. Upon information and belief, as the result of a corporate merger between Pfizer,

Pharmacia and Searle on or about April 16, 2003, Pharmacia and Searle became wholly-owned subsidiaries of Pfizer. As a result thereof, Pfizer is legally responsible for all obligations, debts and liabilities of Pharmacia and Searle and is the successor in interest and real party to Pharmacia and Searle (collectively "Pfizer" and/or "defendants").

## JURISDICTION AND VENUE

12. Plaintiff seeks in excess of $75,000, excluding costs and interests. This Court has jurisdiction of this matter under 28 U.S.C 1332.

13. Venue is proper in this District pursuant to 28 U.S.C 1391.

## STATEMENT OF FACTS

14. Decedent was prescribed and ingested Bextra between June 10, 2003 and December 19, 2003 and she died on January 8, 2004 as a result of a sudden heart attack.

15. Bextra is the brand name of Valdecoxib, one of a class of drugs called "prostaglandins," which is used to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, osteoarthritis, rheumatoid arthritis and dysmenorrheal (menstrual pain). Prostaglandins are COX (cycloxygenase) inhibitors. COX enzymes metabolize arachidonicacid to produce prostaglandins.

16. Bextra is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

17. On November 16, 2001, Valdecoxib was approved by the FDA for relief of symptoms of osteoarthritis and adult rheumatoid arthritis.

18. In the first coronary artery bypass grafting (CABG) study, the study found that

3

there was a statistically significant increase in thromboembolic events (myocardial infarction, cerebrovascular accident, deep vein thrombosis and pulmonary embolism) in the group treated with Parecoxib/Valdecoxib post-p as compared to the placebo group.

19. Parecoxib is an intravenous COX-2 inhibitor which the body metabolizes to the active form, Valdecoxib (Bextra). However, the FDA rejected Parecoxib when it came up for approval.

20. Although Parecoxib is effective as an analgesic only when it is converted to Valdecoxib in vivo, and approval of Valdecoxib was based on studies in patients with low cardiovascular risk, the labeling of Valdecoxib does not reflect the experience with Parecoxib.

21. On November 5, 2004, Pfizer submitted the final report of the second CABG study to the FDA, which included over 1,500 patients treated after CABG. This report showed an increased cardiovascular risk in patients treated with Bextra compared to placebo. Observed cardiovascular events included thromboembolic events such as myocardial infarction, cerebrovascular accident, deep vein thrombosis and pulmonary embolism.

22. As discussed more fully above, a series of clinical and epidemiologic analyses have raised questions about the cardiovascular safety of all coxibs, all of which were available to defendants during their marketing of Bextra.

23. On December 9, 2004, defendants Pfizer, Pharmacia and Searle finally acknowledged the increased risk of heart attack associated with Bextra and strengthened the label by adding a "bolded warning."

24. At or about the same time, Garrett Fitzgerald, M.D. of the University of

4

Pennsylvania pooled data of other COX-2 inhibitor drug use in 5,930 patients

participating in 12 clinical trials. Among all the patients, Dr. Fitzgerald says the risk for

heart attacks and strokes was more than twice as high in those taking COX-2 inhibitors

compared with people who took placebos.

25. Defendants' clinical and epidemiological studies were intentionally and/or

negligently designed so that one could not detect an increased risk of cardiovascular

events in patients who did not have CABG, however epidermiological studies, as well as

the pharmacological mechanism of action and injury of Bextra, all conclusively showed,

by the time of Bextra's launch, that it presented an unreasonable cardiovascular risk to

patients.

26. Despite the foregoing, defendants continue to represent to consumers that Bextra

is safe, and that any cardiovascular and/or cardiothrombic side effects are not associated

with the drug.

27. Defendants either directly or through its agents, servants, and employees,

designed, manufactured, marketed, advertised, distributed, and sold Bextra for the

treatment of osteoarthritis, rheumatoid arthritis and pain and other "off-label" uses.

28. As a result of the defective nature of Bextra as well as defendants failure to warn

of the increased cardiovascular risk, those persons who were prescribed and ingested or

injected Bextra, including decedent, have suffered severe and permanent injuries.

29. Defendants concealed their knowledge of Bextra's unreasonably dangerous risks

from decedent, other consumers, and the medical communities.

30. Defendants failed to conduct adequate post-marketing surveillance of Bextra,

after they began marketing, advertising, distributing and selling the product.

5

31. On April 7, 2005, the Food and Drug Administration announced that it had asked Pfizer, Inc. to withdraw Bextra. Had defendants properly disclosed the risks associated with using Bextra, decedent would not have taken the drug.

32. As a direct and proximate result of decedent's ingestion of Bextra, decedent suffered a heart attack and died on January 8, 2004.

33. Defendants acted in a willful, wanton, and/or fraudulent manner toward decedent and other Bextra consumers, and plaintiff is therefore entitled to punitive damages.

## COUNT I
## STRICT LIABILITY

34. Plaintiff incorporates by reference the allegations in the above paragraphs.

35. Defendants were engaged in the business of manufacturing, designing, testing, marketing, selling, advertising, warning, and distributing Bextra. The Bextra consumed by decedent reached decedent without substantial change in the condition in which it was sold by defendants.

36. Decedent used Bextra in the manner for which it was intended and a manner which was reasonably foreseeable.

37. Decedent was not aware of, nor could she have discovered, the dangerous nature of Bextra.

38. The Bextra consumed by decedent was in a defective condition and unreasonably dangerous in that it was defective in design, manufacturing, instructions and/or warnings to doctors, the FDA, and the consuming public, and such defects existed at the time the Bextra was sold by defendants.

39. The actions of defendants caused or contributed to cause the pain, suffering, and death of decedent.

40. As a direct and proximate result of the defects in Bextra, decedent sustained damages including but not limited to severe injury to her body, severe pain and suffering, mental anguish, loss of enjoyment of life and death.

41. As a direct and proximate result of the defects in Bextra, plaintiff has incurred funeral expenses, and has and will continue to suffer mental anguish, suffering, bereavement, loss of companionship, comfort, care and support that would have been provided her but for defendants' negligence.

42. The aggravating circumstances attending decedent's death and the wanton conduct of defendants as set forth above entitle plaintiff to an award of punitive damages.

WHEREFORE, plaintiff demands judgment against defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all other such relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

43. Plaintiff incorporates by reference the allegations in the above paragraphs.

44. Defendants had a duty to use reasonable care in the manufacturing, design, testing, marketing, warning, and advertising of its product Bextra.

45. Defendants were negligent and breached their duty of reasonable care in that Defendants:

a. Failed to adequately and properly test Bextra so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

b. Failed to utilize and/or implement a reasonably safe design in the manufacture of Bextra;

c. Failed to manufacture Bextra in a reasonably safe condition for which it was intended;

d. Failed to adequately and properly warn doctors, the FDA, and the consuming public regarding the risks of complications in using Bextra in a manner for which it was intended;

e. Failed to adequately and properly label Bextra so as to warn doctors and the consuming public of the risks of complications in using Bextra; and

f. Failed to adequately and properly label Bextra so as to warn plaintiff and doctors of the risk of heart attack and stroke with the use of Bextra;

46. The actions of defendants caused of contributed to cause the pain, suffering, and death of decedent.

47. As a direct and proximate result of the defects in Bextra, decedent sustained damages including but not limited to severe injury to her body, severe pain and suffering, mental anguish, loss of enjoyment of life and death.

48. As a direct and proximate result of the defects in Bextra, plaintiff has incurred funeral expenses, and has and will continue to suffer mental anguish, suffering, bereavement, loss of companionship, comfort, care and support that would have been provided her but for defendants' negligence.

49. The aggravating circumstances attending decedent's death and the wanton conduct of Defendants as set forth above entitle plaintiff to an award of punitive damages.

WHEREFORE, plaintiff demands judgment against defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III
## NEGLIGENCE PER SE

50. Plaintiff incorporates by reference the allegations in the above paragraphs.

51. Defendants had an obligation to comply with the law in the manufacture, design,

testing, production, research, distribution, marketing, labeling, and warning of the risks and dangers of Bextra.

52. Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq., related amendments and codes of federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

53. Decedent, as a purchaser and consumer of Bextra, is within the class of persons the statutes and regulations described above are designed to protect and decedent's injuries are the type of harm these statutes are designed to prevent.

54. Defendants' actions constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331 and constitute a breach of duty subjecting defendants to civil liability for all damages arising therefrom.

55. Defendants failed to meet the standard of care set by the following statute and regulations, which were intended for the benefit of individuals such as decedent, making defendant negligent per se:

a. The labeling lacked adequate information on the use of the drug Bextra (21 C.F.R. §201.56(a) and (d));

b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, thromboembolic events, primarily heart attacks or stroke, and other adverse medical conditions, as soon as there was reasonable evidence of their association with the drug (21 C.F.R. §201.57(e));

c. There was inadequate information for patients for the safe and effective use of Bextra (21 C.F.R. §201.57(f)(2));

d. There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants's drug Bextra (21 C.F.R. §201.57(f)(1)); and

e. The labeling was misleading and promotional (21 C.F.R. §201.56(b)).

56. Defendants' violations of the statutes described above, caused or contributed to cause the pain, suffering, and death of decedent.

57. As a direct and proximate result of the defects in Bextra, decedent sustained damages including but not limited to severe injury to her body, severe pain and suffering, mental anguish, loss of enjoyment of life and death.

58. As a direct and proximate result of the defects in Bextra, plaintiff has incurred funeral expenses, and has and will continue to suffer mental anguish, suffering, bereavement, loss of companionship, comfort, care and support that would have been provided her but for defendants' negligence.

59. The aggravating circumstances attending decedent's death and the wanton conduct of defendants as set forth above entitle plaintiff to an award of punitive damages.

WHEREFORE, plaintiff demands judgment against defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

60. Plaintiff incorporates by reference the allegations in the above paragraphs.

61. Defendants expressly warranted to decedent, by and through statements made through authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Bextra was safe, effective, and fit and proper for its intended use.

62. In using Bextra, decedent relied on the skill, judgment, representations and

foregoing expressed warranties made by defendants. Said warranties and representations were false in that Bextra was not safe and was unfit for the use for which it was intended.

63. The actions of defendants caused of contributed to cause the pain, suffering, and death of decedent.

64. As a direct and proximate result of the defects in Bextra, decedent sustained damages including but not limited to severe injury to her body, severe pain and suffering, mental anguish, loss of enjoyment of life and death.

65. As a direct and proximate result of the defects in Bextra, plaintiff has incurred funeral expenses, and has and will continue to suffer mental anguish, suffering, bereavement, loss of companionship, comfort, care and support that would have been provided her but for defendants' negligence.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, together with interest, costs of suit, attorneys' fees and such other relief as the Court deems proper.

**COUNT V**

**BREACH OF IMPLIEDWARRANTY**

66. Plaintiff incorporates by reference the above paragraphs.

67. Prior to the time that Bextra was used by plaintiff, defendants impliedly warranted to decedent that Bextra was of merchantable quality and safe and fit for the use for which it was intended.

68. Decedent was unskilled in the research, design and manufacture of Bextra and reasonably relied entirely on the skill, judgment and implied warranty of defendants in using Bextra.

69. Bextra was neither safe for its intended use nor of merchantable quality in that it

had dangerous propensities when put to its intended use and would cause injuries to the user.

70. The actions of defendants caused of contributed to cause the pain, suffering, and death of decedent.

71. As a direct and proximate result of the defects in Bextra, decedent sustained damages including but not limited to severe injury to her body, severe pain and suffering, mental anguish, loss of enjoyment of life and death.

72. As a direct and proximate result of the defects in Bextra, plaintiff has incurred funeral expenses, and has and will continue to suffer mental anguish, suffering, bereavement, loss of companionship, comfort, care and support that would have been provided her but for defendants' negligence.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, together with interest, costs of suit, attorneys' fees and all other such relief as the Court deems proper.

### JURY TRIAL REQUEST

73. Plaintiff requests a jury trial.

Respectfully submitted,

*Levi Boone III* — 3/3/08

Levi Boone, III, Esq.
BOONE LAW FIRM, P.A.
401 West Sunflower Road
Cleveland, Mississippi 38732
ATTORNEY FOR PLAINTIFF

IN THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT
OF BOLIVAR COUNTY, MISSISSIPPI

IN THE MATTER OF THE ESTATE OF:
DORIS BURNETT, DECEASED

CIVIL ACTION NO. _2004-0323_

MONIQUE BURNETT                                    PETITIONER

## ORDER GRANTING LETTERS OF ADMINISTRATION

This day this cause came on to be heard on the duly verified petition of Monique Burnett seeking to be appointed administratrix of the Estate of Doris Burnett, deceased and for letters of administration with respect to the Estate of Doris Burnett, deceased and the Court having duly and maturely considered the same and the evidence having first found that it has jurisdiction of the parties and the subject matter and full authority to grant relief prayed for, and having found that each and every matter, statement of fact and allegation set forth in the petition to be fully substantiated by the proof and to be true and correct as therein stated, and the Court otherwise being fully advised in the premises, does accordingly: Order and Adjudge as follows:

1.  Doris Burnett departed this life on January 8, 2004 and had at the time of her death a fixed place of residence in Cleveland, Second Judicial District of Bolivar County, Mississippi.

2.  Doris Burnett had no Last Will and Testament, so far as petitioner knows or believes after a diligent search and inquiry.

3.  Doris Burnett left surviving her the following heirs at law and wrongful death beneficiaries: Monique Burnett, daughter, an adult resident citizen of Cleveland, Second Judicial District of Bolivar County, Mississippi; and Desmond Burnett, son, an adult resident

KS
703

citizen of Cleveland, Second Judicial District of Bolivar County, Mississippi.

4.    Petitioner would show that the estate should be immediately administered for the proper management thereof and for the prompt collection of the assets.  The estate consists of no real or personal property.  Upon information and belief, the death of Doris Burnett may have been caused by the negligence of certain medical providers and petitioner seeks to investigate and determine the cause of death.

5.    Petitioner is over the age of eighteen (18) years, is of sound mind and has not been convicted of a felony.

6.    It would be in the best interest of the Estate that petitioner, Monique Burnett, daughter of the decedent, be granted letters of administration.  This Court waive on the necessity of posting a bond in the premises pending further order.

IT IS THEREFORE ORDERED AND ADJUDGED that:

1.    Monique Burnett is hereby appointed to serve as administratrix of the Estate of Doris Burnett, deceased.

2.    The Clerk of the Court is hereby directed to issue to Monique Burnett letters of administration upon her taking the oath required by law and the necessity of filing a bond is hereby waived.

3.    The inventory and appraisal of said estate is hereby dispensed with pending further order of this Court.

ORDERED, ADJUDGED, and DECREED, this the _____9_____ day of _____Sept_____, 2004.

_____
CHANCELLOR

2

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Estate of Doris Burnett, Deceased, By and Through the Administratrix, Monique Burnett

## DEFENDANTS

Pfizer, Inc.

**(b)** County of Residence of First Listed Plaintiff **Bolivar**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Levi Boone, III, Esq., Boone Law Firm, P.A.
P. O. Box 1772, Cleveland, MS 38732 Ph. 662-843-7946

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability ☒ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment  Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
Wrongful death-product liability claim-ingestion of Bextra

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ unSpecified

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 03/03/2008

SIGNATURE OF ATTORNEY OF RECORD *Levi Boone, III*

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____